**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ACE HARDWARE CORPORATION,** | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No. 06 CV 5335 |
| | ) | |
| v. | ) | Hon. Amy St. Eve |
| | ) | |
| **MARN, INC. d/b/a ARNOLD'S ACE HARDWARE and MICHAEL ARNOLD,** | ) | Magistrate Judge Brown |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**DEFENDANTS/COUNTERPLAINTIFFS' MEMORANDUM IN OPPOSITION TO PLAINTIFF/COUNTERDEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants MARN, INC. and MICHAEL R. ARNOLD, by and through their attorneys RUNES LAW OFFICES, P.C., and as and for their Response Memorandum in Opposition to Summary Judgment state as follows:

**Introduction**

For the reasons detailed herein, Defendants/Counter-Plaintiffs request that ACE's Motion for Summary Judgment be denied in all respects.

**Facts**

MARN, Inc. is a New York Corporation with the sole business of operating a hardware store in Cortland, New York. ACE SOF 2. Prior to becoming a member of ACE in 2004, MARN was a member of Tru-Serve beginning in 1999. ACE SOF 5. ACE had approached ARNOLD on behalf of MARN in 1999, 2002 and lastly in 2003 to invite MARN to become an ACE member; the last courtship occurred during a time that ACE's agents were aware of ongoing disputes between MARN and Tru-Serve related to how the store was stocked and restocked. MARN SOAF 27. During the course of negotiations in 2003 between the parties for

MARN to become an ACE member, several representations were made to ARNOLD by ACE employees that:

a) Chute would be present in the Cortland store at least one day per week for the first six months following conversion, to assist MARN in its transition to ACE membership; replacing Marn's dead and non-productive inventory with active and productive goods, and implementing a new layout of "product adjacencies" to be designed by Ace.

b) McGovern would regularly appear at the store to provide instruction and guidance on store displays, organization and marketing;

c) ACE would provide training to MARN's staff with regard to use of ACE's internet and software systems; and

d) The application of Automatic Deletion of Stock Orders ("ADSO") to MARN would be reviewed after six months of membership if MARN was current in its account with ACE.

MARN was current in its account with ACE for its first two years of membership.

ARNOLD relied on each of these representations in deciding to have MARN become an ACE member and in deciding that he would personally guaranty MARN's liability to ACE. ACE failed to comply with each of the above representations. MARN SOAF 25.

During negotiations in 2003-04 for MARN to become an ACE member, several representations were made to ARNOLD by ACE employees and others that:

a) ACE would provide MARN with a conversion loan to assist in converting the store from True Value to Ace; and

b) ACE would provide a loan for securing ACE signage;

c) ACE would provide financial assistance for MARN to convert from True Value inventory to ACE inventory.

2

Said assistance and loans were not provided, damaging MARN's cash flow and ability to properly stock its store. MARN SOAF 26.

MARN's credit limit with ACE was a variable number, at times $35,000, at times as much as $60,000, with exceptions being applied based on a variety of factors to push the "limit" higher. MARN SOF Response 5. ADSO was applied to MARN's orders on a regular basis, even in a situation where ARNOLD had been promised ADSO would not be applied to the order just two days earlier. MARN SOF Response 10. Each time ADSO was incorrectly applied (which was each time it was applied) MARN was required to spend time and money to attempt reshipment, often at the expense of customer good will. MARN SOF Response 8, MARN SOAF 24. After the last ADSO application on September 3, 2006, ARNOLD stopped payment on a check but continued to correspond with Hampton and MARN's field representative to address not only the ADSO issue but credits which MARN was entitled to (related to errors on prior stock orders) which had not been posted to the account in four weeks. MARN SOF Response 11. No further communication was received from ACE until the notice of termination contemporaneous with the filing of the instant suit.

Subsequent to the termination, MARN took multiple steps to disassociate itself from ACE and to advise its customers and vendors of same, but left three ACE signs on the front of the store (after electrical disconnection) due to the sheer expense of removing them. The signs were removed by June 22, 2007. MARN SOF Response 2, ACE SOF 12.

After MARN's termination as an ACE member, the closest ACE store was in Whitney Point, New York, at least twenty miles away. MARN SOAF 28.

**ARGUMENT**

I.    Summary Judgment Standard

MARN and ARNOLD stipulate that ACE has correctly stated the standard for summary judgment.

II.    Count I - Ace's Claim for Breach of Contract

ARNOLD has been correctly quoted in his deposition as admitting that MARN owes approximately $75,000 for merchandise and retail services before credits and setoffs. Subsequent to ARNOLD's deposition and contemporaneously with the filing for Summary Judgment, ACE credited MARN's account for $9,700 for ACE's returned membership stock. ACE SOF 7. As noted in response to same, Defendants have no basis on which to determine whether $9,700 is the appropriate value of the stock as of the day of termination in light of the $154,000,000 inventory accounting error announced by ACE to its members on September 7, 2007. The Declaration of Gordon Hampton, Exhibit 4 to ACE's SOF, offers no explanation for how the credit was calculated. Neither does ACE explain anywhere whether MARN has received any credits since termination for its patronage dividends, MARN SOAF 29. And nowhere does ACE address whether MARN ever received credits to its account due to stocking errors that contributed to the implosion of the business relationship.

While the sums owed for merchandise and retail services are undisputed, the amount of setoffs MARN is entitled to has not been established by Movant, which has the burden of establishing that there is no genuine issue of material fact with regard to both liability and damages. Fed. R. Civ. P. 56. While judgment may be appropriate as to the issue of liability regarding merchandise and services, judgment on damages with regard to those issues is not supported by this record and should not be granted.

4

ACE also argues that it should be granted pre-judgment interest of five percent (5%) for unreasonable and vexatious delay in the payment of the balance due. But as noted above, the amount due was and is in dispute and ACE itself has waited eleven (11) months to credit MARN $9,700 for its membership without any explanation as to a) why the credit was not issued sooner or b) why $9700 is the appropriate credit for the stock. Under these circumstances, the failure of MARN and ARNOLD to pay on the account was neither unreasonable nor vexatious but was instead reflective of a continuing good-faith business dispute.

III.    ACE's Count I Signage Claim

ACE cites the Agreement for the proposition that it should be awarded $90,000 as liquidated damages for the eight-and-a-half months that MARN continued to have unlit ACE signs mounted on the front of the store. ACE has offered no explanation as to why this sum is reasonable or bears any relationship to the damage it actually suffered, particularly in light of

a)    the dearth of ACE stores within twenty miles of MARN; and

b)    the long lengths MARN went to in advising its customers and vendors of the fact that it was no longer affiliated with ACE. MARN SOAF 28, MARN SOF Response 2.

The greater problem with this portion of ACE's claim is that if the purpose of a contractual clause is merely to secure performance of the Agreement, Illinois law will not uphold it. On its face, the signage penalty is just such a provision. The clause ACE seeks to enforce is an unreasonable penalty in that a) the fixed amount bears no reasonable relationship to the damages ACE claims to have incurred; and b) ACE has not argued or proved that the damages are difficult or impossible to quantify. *Hidden Grove Condominium Assoc. v. Crooks*, 318 Ill.App.3d 945, 947, 744 N.E.2d 305 (3rd Dist. 2001). See also *United Order of American Bricklayers and Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.*, 519 F.2d 331 (7th Cir. 1975). ACE's

5

claim for damages due to the continued posting of signage is not supported by the record, is contrary to applicable law and should be denied with prejudice.

IV.      Count II - ACE's Claim Against ARNOLD for Personal Guaranty

For the reason detailed throughout, ARNOLD objects to the granting of summary judgment with regard to Count II. Defendant ARNOLD acknowledges that in the event that Judgment is entered for ACE on Count II against MARN that he is personally liable pursuant to the Guaranty referenced in Count II.

V.      Count III - ACE's Claim for Declaratory Judgment

ACE has asserted in its Motion for Summary Judgment that if its Motion is granted, it will voluntarily dismiss Count III. Therefore Defendants will not argue Count III.

VI.      MARN and ARNOLD's Counterclaim for Breach of Contract

a.      Specific breach allegations

*Claim for unpaid loans* - While ACE's argument that no damages lie for loans that would have had to have been paid back contains common sense appeal, the financial reality is that MARN was promised that support to streamline the conversion process and properly stock the store. The failure of ACE to provide the loans after Defendants relied on the promises in their decision to become an ACE member had the effect of severely exacerbating the financial distress MARN had in the months prior to ACE membership and in limiting the speed and thoroughness of the conversion. MARN SOAF 24-27, 30.

*MARN's claim for undelivered retail support* - ACE responds to this issue by asserting that MARN had retail services available to it for a fee and used said services; this assertion is both correct and beside the point. MARN and ARNOLD were promised during the courtship in 2003 that specific services of specific persons (Chute and McGovern among others) would be

6

provided *at ACE's expense*. MARN SOAF 25. The effect of not being provided these services was that ARNOLD (who had never operated a store of any kind before 1999) had to hire a consultant Vince Cardone at the cost of several thousand dollars and that MARN, which was experiencing cash flow problems due to the lack of promised financial support, went without most of the expertise it needed because it could not afford it. MARN SOAF 30, 31.

*MARN's reliance on proforma projections -* ACE again argues with some logical appeal that MARN was not entitled to rely on profit projections. Again this argument is both correct and beside the point; MARN's breach issue regarding the proformas was not that the proformas were inaccurate but that ACE caused many of the underlying presumptions of the proformas not to occur in not providing the promised staff training and services of Chute and McGovern at ACE's expense and in refusing to stop the application of ADSO on its orders even when its account was current. MARN SOAF 23-30.

*ACE's Claims That it Honored the Agreement -* ACE argues with regard to each of five alleged breaches that it acted within the discretion allowed it in the Agreement. This is not surprising because under ACE's construction of the contract it wrote, ACE effectively had no obligations to MARN and ARNOLD regardless of the promises made to induce membership. ACE argues that it preserved the right to unilaterally cancel orders, deny credit, sell or not sell merchandise, not provide promised retail services at its cost, and to divert merchandise to its website while not making it available to MARN.[1]

ACE's repeated reliance on *Eichengreen v. Rollins, Inc.*, 325 Ill.App.3d 517, 757 N.E.2d 952 (1st Dist. 2001) is misplaced; *Eichengreen* involved an assertion by Plaintiff that he had told the Defendant he wanted a structure covered in the security contract. There does not appear to be

---

[1] Contrary to ACE's suggestion, MARN's issue with ACE's website only arose when advertising fliers led MARN's customers to believe that merchandise was available in the Cortland store that was only made available to the website. MARN SOAF 32.

a corresponding assertion that Defendant agreed to that term; by contrast, Defendants have created multiple issues of fact as to whether ACE made multiple promises in inducing MARN to become an ACE member, then "pulled the rug out" from MARN after it became a member. As mentioned in *Eichengreen*, this is an appropriate case to consider the "provisional admission approach" to contract construction, in contrast to the four corners rule or the parol evidence rule, although the language of a contract is facially unambiguous, a party may still proffer parol evidence to the trial judge for the purpose of showing that an ambiguity exists which can be found only by looking beyond the clear language of the contract.

b.  Defendants' difficulties in specifying damages

As acknowledged in ARNOLD's Affidavit, Par. 11, attached to the Statement of Facts Response, ACE is correct that Defendants did not disclose an expert witness for calculation of damages within the time provided by the Court. The controlling factor in not doing so was expense; ARNOLD, both in his individual capacity and as principal of MARN simply has not been able to afford since the litigation began the cost associated with an accountant to quantify damages attributable to each category of alleged breach. And as ACE also correctly notes, ARNOLD was unable during discovery to quantify himself said damages. What Defendants have been able to do is to identify the promises they relied on in becoming an ACE member and the type of damages caused when those promises were broken. MARN SOAF 24-29. Defendants did provide to ACE during discovery financial statements for MARN from 2000-2006 which are summarized in graph form in Exhibit H to Defendants' Rule 56 statement; notably, the graph establishes that MARN's losses jumped from $53,591 in 2003 (its last year as a Tru-Serve member) to $94,619 in 2004 (its first year with ACE). While undersigned counsel would have

8

preferred more specificity in the calculation of damages, Defendants have created a fact issue on the subject of damages which should be tried before a jury.

Contrary to ACE's assertions, MARN's descriptions of the damages it suffered due to the violation of various promises and arbitrary application of ADSO are not "new evidence". For better or worse, the same assertions in roughly the same level of detail were made by Defendants in response to written discovery and at ARNOLD's deposition on June 13, 2007.

ACE cites *Ollivier v. Alden*, 262 Ill.App.3d 190, 634 N.E.2d 418 (2d Dist. 1994) for the axiomatic proposition that Plaintiff bears the burden of proof to establish causation, the correct measure and computation of damages. But in *Ollivier*, the Plaintiffs were allowed to meet their burden of proof on these issues at trial rather than at summary judgment. Id., Ill.App.3d at 196.

## **CONCLUSION**

WHEREFORE Defendants MARN, Inc. and MICHAEL R. ARNOLD pray that the Motion for Summary Judgment be denied with prejudice in its entirety and for such and other relief as the Court deems equitable and just in all of the circumstances.

    Respectfully submitted,

    MARN, Inc. and MICHAEL R. ARNOLD

    /s/Kenneth A. Runes_____
    By RUNES LAW OFFICES, P.C., their attorneys

Kenneth A. Runes
RUNES LAW OFFICES, P.C.
800 W. Central Road  Suite 104
Mount Prospect, IL  60056
(847) 222-0600