**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ACE HARDWARE CORPORATION, | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | )    CASE NO.: 06-CV-5335 |
| | ) |
| MARN, INC. d/b/a ARNOLD'S ACE | ) |
| HARDWARE and MICHAEL ARNOLD, | ) |
| | ) |
| Defendants/Counter-Plaintiffs. | ) |

**MEMORANDUM OPINION AND ORDER**

This dispute centers on a membership agreement between Plaintiff/Counter-Defendant Ace Hardware Corporation ("Ace" or "Plaintiff") and Defendant/Counter-Plaintiff Marn, Inc. ("Marn"). The relationship went sour and ultimately ended in termination of the membership agreement. Plaintiff initiated this action by filing a three-count complaint against Marn and its president, Defendant Michael Arnold ("Arnold") (collectively "Defendants") on October 6, 2006 alleging two separate counts for breach of contract and seeking declaratory judgment regarding its rights under the agreement at issue.[1] See [1]. Defendants Marn and Arnold filed an amended counterclaim, the operative pleading for the countersuit in this matter, alleging two counts: (1) breach of contract and (2) fraudulent misrepresentation. See [38]. Ace filed an amended complaint, adding a fourth count for unfair competition in violation of the Lanham Act, but that count has since been voluntarily dismissed. See [50, 63]. Judge St. Eve, to whom this matter initially was assigned, dismissed Count II of Defendants' counterclaim, leaving only a counterclaim for breach of contract. See [52]. Therefore, the three original counts brought by

---

[1] Even with the existence of the countersuit in this case, the Court will refer to Plaintiff/Counter-Defendant Ace Hardware Corp. as "Plaintiff" or "Ace," and will refer to the Defendants/Counter-Plaintiffs as "Marn" and "Arnold" and/or "Defendants" as appropriate for ease of reference.

Ace remain against Marn and Arnold, and the breach of contract claim remains in Defendants' countersuit against Ace.

Currently before the Court is Ace's motion for summary judgment on all of the remaining claims except for Ace's count for declaratory judgment. For the reasons set forth below, Ace's motion for summary judgment is granted with respect to Count I for breach of contract and Count II for breach of the guaranty of credit of Ace's complaint and on Count I of Marn's counterclaim. In view of Ace's representation that it would consider voluntary dismissal of Count III if the relief that it sought on the other counts was granted, the Court offers no opinion on Count III for declaratory relief, but requests that Ace inform both the Court and Defendants in writing within seven days of this decision whether it intends to voluntarily withdraw that claim. Also before the Court is Ace's Motion for Rule 11 Sanctions. For the reasons set forth below, Ace's motion for sanctions is denied.

## I. Facts

The Court takes the relevant facts from the parties' respective Local Rule 56.1 ("L.R. 56.1") statements.[2] The Court resolves all genuine factual ambiguities in Defendants' favor (see *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004)), and takes no position on whose version of disputed factual matters is correct.

L.R. 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g., Koszola*

---

[2] See [67], Ace's Local Rule 56.1(a)(3) Statement of Facts ("Ace SOF"); [83], Defendants' Response to Ace's Local Rule 56.1(a)(3) Statement of Facts ("Defs. Resp. SOF") and Defendants' Local Rule 56.1(b)(3)(C) Statement of Additional Facts ("Defs. SOAF"); [88], Ace's Response to Marn's Local Rule 56.1(b)(3)(C) Statement of Additional Facts ("Ace Resp. Defs. SOAF").

*v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)).  Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement.  See*, e.g., Malec,* 191 F.R.D. at 583.  Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted.  See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec,* 191 F.R.D. at 584.  The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted."  *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000).  Finally, the Court disregards any additional statements of fact contained in a party's response brief rather than in its statement of additional facts.  See*, e.g., Malec,* 191 F.R.D. at 584 (citing *Midwest Imports,* 71 F.3d at l317).

Ace is a Delaware corporation with its principal place of business in Oak Brook, Illinois.  Ace SOF ¶ 1.  Ace is a retailer-owned cooperative in the hardware industry that is wholly owned by its independently operated member stores.  *Id.*  It purchases merchandise from suppliers in large quantities and resells that merchandise in smaller quantities at favorable prices to its member stores.  *Id.*  Marn is a New York corporation with its principal place of business in Cortland, New York.  Ace SOF ¶ 2.  Prior to October, 2006, Marn did business under the name of "Arnold's Ace Hardware."[3]  *Id.*; Defs. Resp. SOF ¶ 2, Ex. A (Dep. of Michael Arnold at 131:3-20).

When approached by Ace in 2003, Marn showed interest in becoming an Ace member store after having problems with another hardware cooperative, Tru-Value Company.  Ace SOF

---

[3] Under what name the hardware store owned by Marn was operated after October, 2006 is disputed by the parties.

¶ 3; Defs. SOAF ¶ 27. Marn and Ace negotiated and entered into an Ace Membership Agreement (the "Agreement") in Illinois in early 2004. Ace SOF ¶¶ 4, 5; Ace SOF, Ex. 1. Ace initially extended Marn a $35,000 credit limit (Ace SOF ¶ 5), which it subsequently increased to $40,000.00. Defs. Resp. SOF ¶ 5, Ex. B ((December 9, 2004 Letter from Hampton to Arnold) ("As discussed your credit limit has been set at $40,000")).[4]

At all times relevant to this dispute, Ace used a merchandise order monitoring system referred to as "ADSO" – Automatic Deletion of Stock Orders – that deleted merchandise orders when a customer exceeded its credit limit with Ace. Ace SOF ¶ 8. Ace and Marn agree that the ADSO applied when a member, such as Marn, exceeded its credit limit by more than 50%. Ace SOF ¶ 8; Defs. Resp. SOF ¶ 8. ADSO was applied to Marn's orders multiple times over the course the two and a half year relationship. Ace SOF ¶ 8. Although delays in receiving stock orders for merchandise as a result of the application of ADSO to Marn's account occurred over the course of the relationship, Ace always ultimately released the order to Marn, and Marn received the stock that it ordered.[5] Ace SOF ¶ 17; Ace Resp. Defs. SOAF ¶ 24, Ex. 5 (Arnold Dep.) at 157.

---

[4] Defendants argue that Marn's credit limit was increased to $60,000 as of December 9, 2004, citing to the letter from Gordon Hampton to Michael Arnold. Defs. Resp. SOF ¶ 5. However, Exhibit B states only that as of that date, Marn's credit limit is $40,000. The letter goes on to state "[w]e are willing to extend a **maximum** credit limit of $60,000 as long as your account is **current** as of the printing of your most recent statement." *Id.*, Ex. B (emphasis added). What is unclear is whether Marn's account was in fact current at the time of the printing of its most recent statement with Ace following receipt of this letter. Defendants do not make any such assertion in their own L.R. 56.1 statement of additional facts. See *Malec*, 191 F.R.D. at 584 (holding that "Rule 56.1(b)(3)(B) "provide the *only* acceptable means * * * of providing additional facts"). Defendants further argue that Marn's credit limit frequently changed for a variety of reasons, including holiday season, direct ship orders, and Marn's ratio of current to future obligations. Defs. Resp. SOF ¶ 8. Again, that assertion is improper. To the extent that new facts outside of the scope of the original statement are introduced, they should be included in the responding party's statement of additional facts. For these reasons, the Court disregards Defendants' assertion.

[5] Ace contends that Marn repeatedly exceeded its credit limit over the course of the relationship. Ace SOF ¶ 8, Ex. 4 ¶ 8. In response, Defendants argue that Marn was owed a set-off credit for stock during

According to Ace's records, Marn's credit balance increased substantially over the course of 2006.[6]  Ace SOF ¶ 10, Ex. 4 ¶ 10.  In April, 2006, Marn's outstanding balance was $37,561.00.  *Id.*  By early September, 2006, Marn reached a balance in excess of $59,510.00.  *Id.*  By mid-September, 2006, Ace's records reflect that Marn's outstanding balance reached more than $75,000.00.  *Id.*  That balance reflected a stopped payment of $11,697.34 from Marn to Ace.  *Id.*; Defs. Resp. SOF ¶ 10, Ex. E at 3 ((September 11, 2006 Letter from Arnold to Hampton) (Arnold stated that "I stopped payment on the most recent transfer of $11,697.34 in order to recoup some of the funds you have reneged on together with the overdue credits that Ace has continually ignored.")).  As of October, 2006, Ace's records reflected that Marn's outstanding balance reached $77,624.00.  Ace SOF ¶ 10.  The Agreement obligated Marn "[t]o pay all amounts shown as currently due on the Company's [Ace's] billing statement for purchases of merchandise, supplies, and services made by Member."  Ace SOF ¶ 21, Ex. 1.  The outstanding balance on Marn's statement as of August, 2007, the amount used for purposes of

---

this same period (due to an accounting error announced to Ace members on September, 5, 2007 which resulted in a net difference of $154 million) and that the improper accounting caused Marn's credit limit to appear artificially high.  Ace SOF ¶ 8; Defs. Resp. SOF ¶¶ 7, 8, Ex. C.  The argument that the accounting error caused Marn's credit limit to appear high, however, improperly asserts an argument in Defendants' response rather than in their additional statement of facts and introduces new facts to which Ace cannot reply.  It also is wholly unsupported.  On its face, the letter does not offer facts that run contrary to Ace's assertion that Marn exceeded its credit limit over the course of the relationship. The letter to which Defendants refer, signed by Ray Griffith, then President and CEO of Ace, states that the accounting issue discovered was related to the reconciliation of the company's 2006 "general ledger" and its "perpetual inventory" balance.  Ex. C.  The Court finds the issue to be disputed and therefore takes no position as to its truth. The letter also states that "this is not a one-year issue; the error accumulated to this point over a number of years, probably five at least."  *Id.*  Defendants further contend, however, that Marn experienced cancellation of orders or partial orders of merchandise or supplies by ADSO even when Marn's credit limit was not exceeded.  Defs. Resp. SOF ¶ 8, Ex. D ¶ 4 (Arnold Affidavit).  Again, Defendants failed to comply with the local rules by failing to properly set out this fact in their statement of additional facts, which would have allowed Ace the opportunity to respond to this assertion.

[6] Although Defendants deny Ace SOF ¶ 10 in its entirety, the denial is conclusory and therefore improper. Because Defendants fail to provide contrary evidentiary proof sufficient to call into question the credit balances listed in Ace SOF ¶ 10, those sums are deemed admitted pursuant to L.R. 56.1(b)(3)(B).  See *Raymond v. Ameritech Corp.*, 2005 WL 525421, at *3 (N.D. Ill. March 4, 2005) (citing L.R. 56.1(b)(3)(B)) ("The opposing party's failure to controvert the moving party's statement of fact results in the moving party's version of the fact being admitted").

the motion before the Court, was $81,298.03. Ace SOF ¶ 7, Ex. 6. Ace now seeks payment of $71,598.03, reflecting a credit of $9,700 for Marn's Ace stock subtracted from the current outstanding balance due to Ace according to an August, 2007 statement in the amount of $81,298.03. Ace SOF ¶ 7, Ex. 6. [7] Any patronage dividends owed to Marn should have been applied to Marn's account as part of an automated process post-termination. Ace Resp. Defs. SOAF ¶ 29; Defs. SOAF, Ex. G (Hampton Dep.) at 69:20-22.

On October 2, 2006, Ace terminated Marn's Ace membership, giving notice that the termination would be effective as of October 5, 2006, and maintaining that the terms of Article III, Section 2 of the Agreement had triggered the termination. Ace SOF ¶ 11, Ex. 9 (Termination Notice, bates-labeled 00193), Ex. 1 (Agreement) at 5; Defs. Resp. SOF ¶ 11. Article III, Section 2 of the Agreement states "upon three (3) days advance written notice to the Member, the Company may terminate this Agreement in the event of a delinquency on the part of the Member in making payment for merchandise or services supplied by the Company to the licensed location in time for receipt thereof by the Company not more than fifteen (15) days after the date on which such payment is due." Ace SOF, Ex. 1 at 5. In addition, the termination notice informed Marn that it must remove "all ACE identification from Store 12220-E and discontinue use of the

---

[7] Defendants fail to provide any evidentiary support for their response to Ace SOF ¶ 7. Defendants "admit[] that the statements attached [at Ace SOF Ex. 6] accurately reflect the sums owed to ACE for merchandise and services but have insufficient information to determine the accuracy of the set-off credit for stock due to an accounting error announced to Ace Members on September 5, 2007, of an estimated $154,000,000.00 * * *." Defs. Resp. SOF ¶ 7, Ex. C. However, a party may not, at the summary judgment stage, rely on statements that it does not have sufficient information to respond to a statement of fact. See *Bledsoe v. Potter*, 2005 WL 2230188, at *3 (N.D. Ill. Sept. 7, 2005) ("Responses such as 'without sufficient information to admit or deny' are unacceptable at the summary judgment stage"); see also *Williams v. Elvyea*, 163 F. Supp. 2d 992, 994 (N.D. Ill. 2001) (citing *Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 626 (7th Cir. 1998) (noting that a non-moving party's response that it is without knowledge or information sufficient to admit or deny a statement of fact was "an equivocation [that] is an admission, not a denial"). Defendants' statement regarding the $9,700 set-off amount for the returned stock is insufficient to avoid admission. Defendants offer no evidentiary support tying the allegations regarding Ace's global accounting errors requiring reconciliation between Ace's general ledger and their actual inventory records to an improper computation of the $9,700 set-off Ace credits to Marn in this specific instance. Thus, Ace's calculation of the $9,700 for the stock set-off is deemed admitted.

Ace name and trademarks in connection with Marn's business." Ace SOF, Ex. 10 (Termination Notice), bates-label 00193.

In Article II, Section 7, the Agreement specifies that "[i]f the Member continues, following such termination, to display at or have affixed to the location any such identification signs bearing the marks of the company [Ace], then the Member [Marn] agrees to pay the Company [Ace] a fee in the amount of Ten Thousand Dollars ($10,000.00) per month, payable on the first day of each and every month during which any such identification sign continues to be affixed to or displayed at the licensed location for one or more days." As of June 18, 2007, Marn had not removed Ace signage from its storefront, but promised to do so by June 22, 2007. Ace SOF, Ex. 10 (e-mails between counsel for Ace, David Fish, and counsel for Defendants, Kenneth Runes); Ace SOF, Ex. 5 (June 13, 2007 Arnold Dep. at 127:1-128:25). Article II, Section 7 also specifies that "the Member [Marn] further agrees that it will pay promptly, upon demand, any and all of the Company's [Ace's] costs and expenses, including reasonable attorney's fees, incurred by the Company in exercising any of the aforesaid rights and remedies [in Article II, Section 7.]." Ace SOF, Ex. 1 at 3.

In addition to Marn's contractual obligations to Ace under the Agreement, Arnold individually guaranteed Marn's performance under the Agreement pursuant to a Guaranty of Credit executed in favor of Ace. Defs. Ans. [19] ¶¶ 19, 22; Ace SOF, Ex. 11 (Guaranty of Credit). Under the Guaranty of Credit, Arnold "unconditionally guaranteed" to Ace and its successors and assigns that Marn would "fully, promptly and faithfully perform, pay when due, and discharge the full amount of all of [Marn's] present obligations" to Ace, as well as "all future obligations to [Ace] hereafter incurred by [Marn] in connection with the purchase of merchandise or supplies from [Ace], or in connection with services render by [Ace] for [Marn]."

Ace SOF, Ex. 11 at 1.  Arnold also agreed to pay Ace "all costs and reasonable attorney's fees or expenses incurred as a result of Marn's non-payment."  Defs. Ans. ¶ 23.

Marn and Arnold assert in Count I of their counterclaim that Ace breached the terms of the Agreement.  See Defs. Am. Counterclaim [35] ¶ 13.  In their pleadings, Defendants did not identify the specific sections of the Agreement that they contend Ace violated. Nor were they required to do so under the notice pleading standard of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain * * * a short and plain statement of the claim showing that the pleader is entitled to relief.").  However, in their interrogatory responses, Defendants identified five provisions of the Agreement that they contend Ace breached.  Ace SOF ¶ 14, Ex. 2 at 2.  In particular, Defendants alleged that Ace:  (i) breached the right to purchase provision set forth at Article I, Section 2 of the Agreement; (ii) misapplied ADSO to Marn's orders resulting in the denial of merchandise contrary to Article I, Section 2; (iii) advertised the Ace Internet site with advertising materials in violation of Article II, Section 3; (iv) refused to issue credits for late payment charges applied against Marn that were the result of a misapplication of ADSO in violation of Article II, Section 11; and (v) failed to deliver "retail support" as promised pursuant to Article I, Section 3.  Ace SOF, Ex. 2 at 2.

## II.    Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party."  *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004).  To

avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

## III.    Analysis

### A.    Ace's Breach of Contract Claim against Marn, Inc. under the Agreement

Ace moves for summary judgment on its breach of contract claim on two grounds. First, Ace contends that summary judgment is appropriate on its claim for unpaid merchandise and services under the Agreement in the amount of $71,598.04, plus prejudgment interest pursuant to 815 ILCS § 205/2, because Marn breached its obligations under the Agreement. Second, Ace submits that it is entitled to summary judgment on its claim for signage violation under the terms of the Agreement in the amount of $90,000 for nine months of unlawful use of the Ace name and/or logo at Marn's store.

The Agreement specifies that "all provisions of this Agreement shall be interpreted and construed in accordance with the laws of Illinois."  Ace SOF, Ex. 1 (Agreement) at 6, Article V, Section 1(a).  Under Illinois law, the elements of a cause of action for breach of contract are "(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff."  *Priebe v. Autobarn, Ltd.,* 240 F.3d 584, 587 (7th Cir. 2001) (quoting *Hickox v. Bell,* 195 Ill. App. 3d 976, 992 (5th Dist. 1990)).  Ace and Marn entered into the Agreement at issue in early 2004.  Ace SOF ¶ 5.  The briefing on summary judgment for Ace's breach of contract claims (Count I) reflects the absence of any dispute between the parties as to the validity and enforceability of the Agreement as a whole.[8]  The Court's analysis therefore will focus on the last three elements.

### 1.    *Ace's Performance under the Agreement*

Although neither party directly addressed the issue in the summary judgment briefing, the Court must consider whether Ace performed its obligations under the Agreement, as it must have done to recover for a breach of contract under Illinois law.  See *Priebe*, 240 F.2d at 587.  In arguing that summary judgment should be entered in its favor on Defendants' counterclaim, Ace contends that it did not breach any terms of the Agreement, thus necessarily implying that it performed its obligations under the Agreement.  Ace Mem. at 9.  Ace argues that Defendants' allegations regarding breach are not, in fact, grounded in the terms of the contract itself but rather

---

[8]  Defendants admitted in their answer filed February 1, 2007 that the Agreement is a "legally binding contract."  Defs. Ans. at ¶ 14.  The Court does acknowledge, however, that Defendants raise a question about the enforceability of the signage provision in the Agreement set forth in Article II, Section 7, claiming that the liquidated damages sought by Ace are an unreasonable penalty.  Defendants do not argue, however, that the signage provision invalidates the entire agreement (which would be contrary to their earlier admission), and the Agreement itself has a severability provision that specifies "if any provision of this Agreement shall be held illegal or void, the validity or the legality of the remaining portion hereof shall not be affected thereby" in the event that the Court should find the signage provision unenforceable.  Ace SOF, Ex. 1 at 6 (Agreement at Article IV, Section 1(c)).

seek to impute "silent" obligations upon it contrary to Illinois law. *Id.* (citing *Eichengreen v. Rollins*, 325 Ill. App. 3d 517, 525 (1st Dist. 2001)). The Court agrees.

The closest that Defendants come to an argument that Ace failed to hold up its end of the bargain under the terms of the Agreement is their contention that Ace misapplied ADSO when Marn's account was current and then failed to credit Marn for late fees stemming from that misapplication under Article II. The same arguments apply to Defendants' claim for a "credit" against amounts owed by Marn for unpaid merchandise. See *infra*, Section III(A)(2). However, with respect to the former, Defendants concede that Marn received the merchandise that it ordered. Ace Resp. Defs. SOAF ¶ 24, Ex. 5 (Arnold Dep.) at 157. And with respect to the latter, Defendants fail to point to any late fees assessed against Marn in the record. In fact, Defendants do not appear to dispute that the *terms* of the Agreement itself were not breached. See Defs. Opp. at 7-8. Instead, they acknowledge that the terms favor Ace, but suggest that this case is appropriate for consideration of the "provisional admission approach to contract construction" because "[D]efendants have created multiple issues of fact as to whether ACE made multiple promises in inducing MARN to become an ACE member, then 'pulled the rug out' from MARN after it became a member." *Id.*

Defendants' response raises two issues. First, Defendants' argument that Ace failed to perform obligations to pursuant to "multiple promises inducing Marn to become an Ace member" is not at issue in this case. That argument suggests that Defendants were fraudulently induced into the agreement—and this Court already has ruled that no claim for fraudulent inducement exists.[9] See [52], Order dated July 19, 2007. The question for purposes of

---

[9] Similarly, Defendants attempt to establish some evidentiary basis for such an argument in their L.R. 56.1 statement of additional facts. See, *e.g.*, Defs. SOAF ¶ 25. Defendants propound a number of facts which are alleged "representations" made by certain Ace employees to Defendants and which Defendants state they "relied on * * * in deciding to have MARN become an ACE member and in deciding that

considering whether Ace is entitled to summary judgment on its breach of contract claim is whether Ace performed its obligations under the terms of the Agreement—and any failure to follow through on promises made prior to the agreement is irrelevant to that inquiry.

Second, Marn's suggestion that this Court follow the "provisional admission approach" and consider extrinsic evidence – i.e. evidence outside of the four corners of the contract – to determine whether Ace complied with the Agreement raises additional problems. The Illinois Supreme Court has not adopted the provisional admission approach in lieu of the more traditional "four corners rule" of contract interpretation where the contract is facially unambiguous. See *River's Edge Homeowner's Ass'n v. City of Naperville*, 353 Ill. App. 3d 874, 879 (2nd Dist. 2004) (citing *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill.2d 457 (1999)) (noting the Illinois Supreme Court had not "squarely addressed the validity of the provisional admission approach in Illinois" in *Air Safety*). In *Air Safety,* the Illinois Supreme Court forestalled a determination of whether the provisional admission approach should be adopted in Illinois because it found that approach was inapplicable where the parties' contract contained an explicit integration clause. *Air Safety*, 185 Ill.2d at 464. However, the Illinois Supreme Court aptly summarized the rule as follows:

> Under the provisional admission approach, although the language of a contract is facially unambiguous, a party may still proffer parol evidence to the trial judge for the purpose of showing that an ambiguity exists which can be found only by looking beyond the clear language of the contract. [Citation.] Under this method, an extrinsic ambiguity exists

---

ARNOLD would personally guaranty MARN's liability to ACE." *Id.* To the extent that that Defendants attempt to argue that those representations were made by individuals that Defendants believe are agents of Ace and that they were "fraudulent," the argument is misplaced because Defendants' claim for fraudulent inducement has been dismissed. Moreover, Defendants framed their breach of contract claim in terms of breach of specific provisions of the Agreement and not in terms of breach of additional promises that were ancillary to the Agreement itself. See Defs. Am. Counterclaim ¶ 13; Ace SOF, Ex. 2 at 2 (Defendants' interrogatory responses listing their bases for their breach of contract claim, all tied to specific provisions of the Agreement). Thus, the representations noted above never have been and are not now an independent basis for Defendants' breach of contract claim.

> 'when someone who knows the context of the contract would know if the contract means something other than what it seems to mean.' [Citation.]

*Id.* at 465. Here, Defendants acknowledge that the contract is facially unambiguous as a matter of law and fail to point to any specific extrinsic evidence for the Court to consider whether an ambiguity exists outside the plain meaning of the contract. Accordingly, even if the Court were to follow the provisional admissions approach, Defendants have not offered any evidence in support of their proposed construction. The Court is not required to "scour the record" to find such evidence; it is the burden of the party contesting summary judgment to point to information to show that a genuine issue of fact exists. *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005). Thus, the Court finds that there is no dispute that Ace performed its obligations under the terms of the Agreement.

### 2.     *Unpaid Merchandise and Services*

With respect to the claim for unpaid merchandise and services under Count I, two questions arise: (i) whether Ace can show, from a liability standpoint, that there is no genuine issue of fact supporting the claim that Marn owes Ace for the unpaid merchandise and retail services under the terms of the Agreement and thus is in breach of its terms and (ii) if summary judgment on liability is appropriate, whether Ace can show that no genuine issue of fact exists with respect to the amount of damages related to the unpaid merchandise and retail services owed by Marn as a result of the breach.[10]

On the issue of liability, there is no dispute that Marn owes Ace money for unpaid merchandise and retail credits in breach of the terms of the Agreement, and thus summary judgment in favor of Ace is appropriate. The Agreement specifies that Marn, Inc. was "[t]o pay all amounts shown as currently due on the Company's [Ace's] billing statement for purchases of

---

[10]  If there is genuine issue on the amount of damages, Rule 56(d)(2) permits a district court to render an interlocutory summary judgment on liability alone.

merchandise, supplies, and services made by [Marn] . . . ." Ace SOF, Ex. 1 (the Agreement). Defendants do not dispute the enforceability of this provision of the Agreement. In fact, Defendants have admitted that Marn owes Ace money. In their opposition, Defendants concede that "Arnold has been correctly quoted in his deposition as admitting that Marn owes approximately $75,000 for merchandise and retail services before credits and setoffs." Defs. Opp. at 4; see also Ace SOF, Ex. 5 (Arnold Dep. at 10: 5-19) (admitting Marn owes Ace approximately $75,000 before considering alleged set-offs and credits owed).

Therefore, with respect to breach of the Agreement's provisions on unpaid merchandise and retail services, the question that remains before the Court is whether any genuine issue of material fact exists as to the amount of damages Ace claims it is owed by Marn, given Defendants' argument that Ace failed to apply certain credits and set-offs that Defendants claims are due to Marn. Ace seeks $71,598.03 in damages for the unpaid merchandise and retail services, plus pre-judgment interest pursuant to 815 ILCS § 205/2. See Ace Mem. at 5; Ace SOF ¶ 7. Defendants contend that Marn is owed certain credits and set-offs that should be deducted from the money owed for this claim, suggesting that a genuine issue of fact exists as to the amount of damages. From Defendants' arguments, the Court can discern three categories of credits or set-offs that Defendants believe Marn is owed: (i) a credit for stock returned by Marn to Ace after the termination of the agreement (and which Ace has determined has a value of $9,700.00 in its calculation of damages sought, crediting this amount to Marn against its claim for the outstanding statement balance); (ii) credits for patronage dividends owed since termination; and (iii) credits for misapplication of the ADSO system. See Defs. Opp. at 4. Defendants argue that Ace, as the moving party, "has the burden of establishing that there is no genuine issue of material fact with regard to both liability and damages," including any amount

of "set-offs." *Id.*, citing Fed. R. Civ. P. 56. In response, Ace offers three arguments: (1) Ace does not bear the burden of proving any amount of set-off, but instead that burden rests with Marn; (2) by failing to deny Ace's statement of fact setting forth Ace's calculation of the set-off credited to Marn, Defendants have in effect admitted Ace's number; and (iii) Marn has waived its right to any set-off for amounts due because Defendants failed to identify a set-off claim as an affirmative defense. See Ace Reply [89] at 3.

The parties have confused the analysis for considering any credits (or "setoffs") in this case. The Seventh Circuit teaches that prior to the promulgation of the Federal Rules of Civil Procedure, the common law equitable doctrines of "setoff" and "recoupment" encompassed the methods by which a defendant could seek to reduce its liability by pleading that the plaintiff owed it money. See *Coplay Cement Co., Inc. v. Willis & Paul Group*, 983 F.2d 1435, 1440 (7th Cir. 1993). "The plea was called 'recoupment' if the plaintiff's debt to the defendant arose out of the same transaction as the defendant's liability to the plaintiff and 'setoff' if it did not." *Id.* Thus, recoupment is the ancestor of a compulsory counterclaim required under Rule 13(a), and setoff is the ancestor of a permissive counterclaim brought pursuant to Rule 13(b). *Id.*

In *Coplay*, the Seventh Circuit held that setoff is now a purely procedural doctrine supplanted by the permissive counterclaim and has, with the exception of two narrow areas of law (banking and bankruptcy), "lost all its equitable foliage." *Id.* at 1441. Therefore, a claim for setoff, or recoupment for that matter, is not an affirmative defense because it does not destroy the plaintiff's right of action. See *Cipa Mfg. Corp. v. Allied Golf Corp*, 1995 WL 337022, at *2 (N.D. Ill. June 1, 2005) (citations omitted) (striking an affirmative defense for setoff where the court had previously dismissed a permissive counterclaim on the same theory); see also *Coplay*, 983 F.2d at 1440. A claim for setoff or recoupment is not technically a "defense" at all, but must

be plead as a counterclaim pursuant to Rule 13. Thus, any claims that Marn has against Ace for the purpose of reducing its damages owed under Count I for breach of the Agreement must be encompassed within Defendants' counterclaim. See, *e.g.*, *Coplay*, 983 F.2d at 1441 ("[A] setoff, so far as relevant here, is just a subset of the permissive counterclaim.")

Whether the relief that Defendants seek is labeled a claim for "setoff" or "recoupment" is irrelevant. The question of whether Marn would be entitled to a "credit" that would reduce the net amount of damages owed by Marn to Ace can be determined only after Defendants proved their counterclaim. Defendants, not Ace, bear the burden of proof on that counterclaim. See *E. J. Brach Corp. v. Gilbert Int'l Inc.*, 1991 WL 148914, at *1 (N.D. Ill. June 18, 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Ace has credited Marn $9,700.00 for returned Ace stock, and only seeks $71,598.03 for Marn's breach related to unpaid merchandise and retail services under Article II, Section 11 of the Agreement. Ace SOF ¶ 7. That amount reflects the outstanding balance of $81,298.03 on the last available statement from August, 2007, less the $9,700.00 credit issued to Marn. Ace SOF ¶ 7, Ex. 6. Defendants provide no evidence to refute the amount of the outstanding balance of $81,298.03 from the last available statement, as set forth and supported in the record by Ace. *Id.*; see also *infra*, Section I at 6, n.5. Therefore, the Court finds that Ace is entitled to summary judgment on its claim related to unpaid merchandise and retail services arising from Marn's breach of the Agreement in the amount of $71,598.03, the full amount sought by Ace.

Finally, Ace claims that it is entitled to prejudgment interest on any amount awarded for its claim related to Marn's breach of the Agreement with respect to unpaid bills. Specifically, Ace argues that 815 ILCS § 205/2 (the "Illinois Interest Act") applies because Marn admitted to owing the entire balance sought by Ace. See Ace Mem. at 5. Defendants counter that

prejudgment interest is inappropriate here because the amount owed by Marn was in dispute and therefore not readily ascertainable, and the dispute arose out of a good-faith relationship between the parties. See Defs. Opp. at 5.

The Illinois Interest Act provides that "[c]reditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing* * *." 815 ILCS § 205/2. Under Illinois law, statutory interest may be recovered at the discretion of the court if the party seeking interest meets the statutory requirements. See *Ameritech Info. Sys., Inc. v. Bar Code Res.,* 331 F.3d 571, 575 (7th Cir. 2003) (citing *Bank of Chicago v. Park Nat'l Bank*, 277 Ill. App. 3d 167 (1st Dist. 1995)). The "instrument of writing" provision of the Interest Act incorporates two requirements into a claim for interest based upon a written instrument, such as a contract. See *Adams v. Am. Int'l Group, Inc.*, 339 Ill. App. 3d 669, 674 (1st Dist. 2003). First, the written instrument must establish a debtor/creditor relationship. *Id.* (citing *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 628 (7th Cir. 2001)). Second, the written instrument must contain a specific due date. *Id.* (citing *Res. Ins. Co. v. General Ins. Co. of America*, 77 Ill. App. 3d 272, 275-276 (1st Dist. 1979) (and cases cited therein)). Third, for any recovery under the Interest Act, the creditor must prove that the money due (here, under the terms of an instrument in writing) is a liquidated amount or subject to easy computation. *Ameritech*, 331 F.3d at 575 (citing *Kansas City Quality Constr. v. Chiasson*, 112 Ill. App. 2d 277 (4th Dist. 1969)).

The Court notes that Defendants do not address whether the Agreement establishes a creditor/debtor relationship, nor do they contend that the Agreement fails to qualify as an "instrument in writing" under the terms of the Interest Act. Instead, Defendants argue that the amount owed to which the interest would be applied is not easily computed in view of the

dispute over the credits allegedly due to Marn.[11]  Defs. Opp. at 5.  However, as the Court explained above, any credit available to Marn must be considered in Defendants' counterclaim and not as a defense that affects the amount owed for Marn's failure to pay its outstanding balance for merchandise and retail services.  Accordingly, the amount due was easily ascertainable—it was the amount set forth in the last available statement reflecting Marn's outstanding balance to Ace, $81,298.03.  Ace SOF ¶ 7, Ex. 6.

As noted above, in order to state a claim for statutory interest based upon an "instrument in writing," the writing itself must establish a creditor/debtor relationship and contain a specific due date for the amount outstanding.  Both requirements are satisfied here.  By obligating Marn "[t]o pay all amounts shown as currently due on the Company's [Ace's] billing statement for purchases of merchandise, supplies, and services made by Member" (Ace SOF ¶ 21, Ex. 1), Article II, Section 11 of the Agreement created a creditor/debtor relationship as required under the Section 205/2 of the Illinois Interest Act.  In fact, Defendants have conceded that Marn owed money to Ace for the merchandise and retail services it received.  See Defs. Opp. at 4.  And the Agreement clearly specifies a date upon which the outstanding amounts are due.  Article II, Section 11 of the Agreement goes on to state that the Member [Marn] agrees "to pay all amounts shown as currently due on the Company's [Ace's] billing statements for purchases of merchandise, supplies and services made by the Member . . . with such promptness as shall

---

[11]  Defendants also contend that the Court should forgo awarding Ace prejudgment interest because "the failure of Marn and Arnold to pay on the account was * * * reflective of a continuing good-faith dispute." Defs. Opp. at 5.  In Illinois, that argument cannot succeed.  "If [the statute's] requisites are satisfied, interest attaches to the amount due under the instrument of writing as a matter of law * * *.  [T]he existence of a good faith dispute as to liability does not affect the operation of the statute [815 ILCS § 205/2] under these circumstances." *Tomaso v. Plum Grove Bank*, 130 Ill. App. 3d 18, 29 (1st Dist. 1985) (citing *First Arlington Nat'l Bank v. Stathis*, 115 Ill. App. 3d 403, 416 (1st Dist. 1983)); see also *Canal Barge Co. v. Commonwealth Edison Co.*, 2002 WL 31356455, at *1 n.1 (N.D. Ill. Oct. 16, 2002) (noting that while a good faith dispute could preclude an award for prejudgment interest in a claim brought for an unreasonable refusal to pay under the Illinois Interest Act, such a dispute does not preclude the recovery of prejudgment interest on money due under an instrument of writing).

enable the Company [Ace] to receive payment *no later than the 10th day following the date of the statement*." Ex. 1 at 4 (emphasis added). Illinois courts have determined that a "due date" need not be a date certain, but can be an "inherent date" defined by the terms of the instrument in writing. See, *e.g.*, *PPM Finance, Inc. v. Norandal USA, Inc.*, 398 F.3d 889 (7th Cir. 2004) (citing *Res. Ins. Co. v. Gen. Ins. Co. of Am.*, 77 Ill. App. 3d 272 (1st Dist. 1979) (finding that the "plain terms" of the writing at issue, a subordination agreement, designated the time of default as an "inherent" date for outstanding money due sufficient to trigger entitlement to prejudgment interest).

In sum, the Agreement qualifies as an "instrument in writing" that evidences the creation of a creditor/debtor relationship between Ace and Marn and provides a specific due date for payment of an easily ascertainable amount. See *Adams*, 339 Ill. App. 3d at 674. Thus, Ace is entitled to prejudgment interest as a matter of law under 815 ILCS § 205/2.

### 3. *Signage*

Ace also contends that Marn breached its post-termination obligations under the Agreement by failing to remove three large signs bearing the Ace name from its storefront and store. For that alleged breach, Ace seeks damages of $10,000 per month as provided in Article II, Section 7 for a total of $90.000.00, plus attorney's fees and costs. See Ace Mem. at 5. Defendants respond that Ace has not offered an "explanation as to why this sum is reasonable or bears any relation to the damage it actually suffered" given the other Ace stores in the area and Marn's efforts to advise its customers and vendors that it no longer was affiliated with Ace. Defs. Opp. at 5. Defendants further contend that the provision at issue – Article II, Section 7 – is

a penalty clause that is unenforceable under Illinois law, rather than a proper liquidated damages provision. *Id.*[12]

Specifically, Defendants argue the clause is unenforceable because the "fixed amount" (presumably the $10,000 per month fee) bears no reasonable relationship to the damages that Ace claims to have incurred and Ace has not argued or proved that its damages are difficult or impossible to quantify. *Id.* (citing *Hidden Grove Condo. Assoc. v. Crooks*, 318 Ill. App. 3d 945, 947 (3rd Dist. 2001); *United Order of Am. Bricklayers and Stone Masons Union No. 21 v. Thorleif & Son, Inc.*, 518 F.2d 331 (7th Cir. 1975)). Ace counters that (1) Defendants have failed to show that the provision allows for a penalty rather than a fee that Ace contends was designed to protect its intellectual property rights; (2) Defendants failed to assert that the clause was an unenforceable penalty as an affirmative defense and thus waived their argument; and (3) Defendants failed to meet their burden of showing that the damages assessed under the provision were unreasonable. See Ace Reply at 4-5.

Defendants acknowledge that Marn breached Article II, Section 7 by failing to remove Ace signs from Marn's storefront. See Defs. Opp. at 5 (acknowledging that Marn continued to have unlit Ace signs mounted on the front of the store for eight-and-a-half months post-termination). Ace terminated the agreement effective October 5, 2006. Ace SOF, Ex. 9 (Termination Notice) at Bates label 193. The termination notice sent by Ace on October 2, 2006, informed Marn that it must remove "all ACE identification from Store 12220-E and discontinue use of the Ace name and trademarks in connection with Marn's business." *Id.* As of

---

[12] The Agreement in Article II, Section 7 specifies that "[i]f the Member continues, following such termination, to display at or have affixed to the location any such identification signs bearing the marks of the company [Ace], then the Member [Marn] agrees to pay the Company [Ace] a fee in the amount of Ten Thousand Dollars ($10,000.00) per month, payable on the first day of each and every month during which any such identification sign continues to be affixed to or displayed at the licensed location for one or more days." Ace SOF, Ex. 1.

June 18, 2007, Marn had not removed the Ace signage from its storefront, but promised to do so by June 22, 2007. Ace SOF, Ex. 10 (e-mails between counsel for Ace, David Fish, and counsel for Defendants, Kenneth Runes); Ace SOF, Ex. 5 (June 13, 2007 Arnold Dep. at 127:1-128:25). Ace signage thus remained on Marn's storefront for approximately eight months and seventeen days in breach of the Agreement.

Given that liability is undisputed, Defendants' contention that summary judgment in favor of Ace is inappropriate must rest on their theory that the provision at issue is an unenforceable penalty rather than a proper liquidated damages clause. The question before the Court therefore is whether the damages that Ace seeks for the breach of the signage provision are enforceable.

As an initial matter, the Court finds that the meaning of the clause imposing the $10,000.00 fee per month for non-compliance with signage removal post-termination is clear on its face, and that the clause is one for liquidated damages. See *New Process Steel Corp. v. Boulevard Bank Nat'l Ass'n*, 1992 WL 14212, at *3 (N.D. Ill. Jan. 17, 1992). A liquidated damages clause provides a measure of damages in the event that a contract is breached. *Id.* Like the clause in *New Process Steel* (where a $25,000 fee per month applied in the event that work on a real estate transaction was not completed on time), the clause at issue here is itself contractual, provides for a measure of damages in the event the contract is breached, and was agreed upon by the parties. *Id.* Article II, Section 7 makes clear that if Marn failed to remove the signs from its storefront post-termination, Ace was to receive $10,000 per month, thereby setting the amount of damages *ex ante* for this potential breach. The fact that the parties failed to use the term "liquidated damages" in the clause is not conclusive. *Id.* (citing *United States v. Bethlehem Steel Co.*, 205 U.S. 105 (1907)).

Before turning to the merits regarding the enforceability of the liquidated damages clause in Article II, Section 7, the Court addresses Ace's argument that Marn failed to raise unenforceability as an affirmative defense and consequently waived it. When a party contends that a liquidated damages provision "to which it freely and knowingly consented [i]s actually a penalty and therefore void," that party bears the burden of proof. *First Nat'l Bank of Chicago v. Atlantic Tele-Network Co.*, 946 F.2d 516, 521 (7th Cir. 1991). Thus, Marn, and not Ace, must prove that the liquidated damages clause is an unenforceable penalty provision. See *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1290 (7th Cir. 1985) (applying Illinois law); see also *Crown Products, Inc. v. Wilkinson Mfg. Co.*, 1991 WL 255574, at *3 (N.D. Ill. Nov. 26, 1991) (citations omitted) ("Illinois places the burden of proving a liquidated damages clause voice as a penalty on the party resisting its enforcement"); *Cable TV Fund 14-A Ltd. v. City of Naperville*, 1997 WL 433628 at *5 (N.D. Ill. July 29, 1997) ("[t]he party asserting the invalidity of the liquidated damages provision [] bears the burden of proving that these damages are actually an unenforceable penalty").

Under Seventh Circuit law, any argument that Article II, Section 7 constitutes an unenforceable penalty provision must be asserted as an affirmative defense. See *XCO Int'l Inc. v. Pacific Scientific Co.*, 369 F.3d 998, 1003 (7th Cir. 2004) (citations omitted); see also *Pace Communications, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 594 (7th Cir. 1994). Fed. R. Civ. Pro. 8(c) requires that a defendant to plead an affirmative defense in its answer to the complaint. See *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997). The purpose of that rule is to avoid surprise and undue prejudice to the plaintiff by providing notice and the opportunity to demonstrate why the defense should not prevail; a defendant should not be "permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Id.* (citations omitted). A

defendant's failure to plead an affirmative defense risks a finding that the defense is waived. *Id.* (citing *Metro. Hous. Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1287 (7th Cir. 1977) (an affirmative defense "must be pleaded or it will be considered waived").

The Court finds that Marn did not waive its affirmative defense that the liquidated damages provision in Article II, Section 7 constitutes an unenforceable penalty. Ace filed an amended complaint on June 20, 2007, adding a fourth count in which Ace alleged that Marn had engaged in unfair competition practices under the Lanham Act. See Ace's Amended Complaint (DE 50). Count IV specifically relied upon language in Article II, Section 7. *Id.* In their answer to the amended complaint filed on August 13, 2007, Defendants incorporated by reference their prior responses to the original complaint (an approach to which, from the Court's review of the record, Ace raised no objection) and raised the following as an additional affirmative defense: "Plaintiff's claims are barred by public policy, because they have attempted to turn traditional trademark remedies into a liquidated damages clause. However, this effect is really an unnecessary penalty." Am. Ans. [58] at 6. And while Ace points out in a footnote that the amended answer only pertained to the allegations in Count IV (see Ace Reply at 5, n.3), the affirmative defense included in this answer targeted the exact same provision that is at issue here on the breach of contract claim under Count I: Article II, Section 7.

While procedurally the use of two complaints and two answers is less than ideal, particularly given that Ace later voluntarily dismissed Count IV, the Court is bound by the record before it. What is clear from that record is that Ace was on notice that Defendants took issue with the liquidated damages provision by asserting an affirmative defense in the amended answer, even though the affirmative defense was not tied to a specific claim. While it might be considered fortuitous to give Defendants the benefit of their additional pleading here, the Court

points out that it was Ace that chose to amend its complaint to add an additional count. Given that Defendants provided notice of their challenge to the enforceability of the clause in Article II, Section 7 in August 2007, the Court finds that Defendants did not waive this affirmative defense. At that time, discovery had not yet closed (see Minute Order [57] dated July 31, 2007), and Ace cannot show surprise or ambush if the Court considers the affirmative defense. Nevertheless, the burden remains on Defendants with respect to that affirmative defense.

The Court now turns to the merits of Defendants' contention that the liquidated damages provision for the signage violation under Article II, Section 7 constitutes an unenforceable penalty. The distinction between an enforceable liquidated damages provision and an unenforceable penalty provision is a question of law for the court to decide. *Lake River Corp.*, 769 F.2d at 1290 (applying Illinois law). "It is a rule of the common law of contracts, in Illinois and elsewhere, that unless a parties' ex ante estimate of damages is reasonable, their liquidated damages provision is unenforceable, as constituting a penalty intended to 'force' performance." *XCO Int'l Co.*, 369 F.3d at 1001 (citations omitted) (applying Illinois law). In *XCO*, the Seventh Circuit observed that the reason for the rule is "mysterious" and one of the "abiding mysteries of the common law," given that courts do not review other provisions of contracts for "reasonableness" and that such provisions often appear in a bargained-for contract between two sophisticated commercial parties. *Id.* The Seventh Circuit further stated that although the rule against penalty clauses "lingers, it has come to seem rather an anachronism, especially in cases in which commercial enterprises are on both sides of the contract," and is countered by an emerging presumption against interpreting liquidated damages provisions as unenforceable penalty clauses. *Id.* (citing, among others, *Penske Truck Leasing Co. v. Chemetco, Inc.*, 311 Ill.

App. 3d 447 (2000); *Pav-Saver Corp. v. Vasso Corp.,* 143 Ill. App. 3d 1013 (1986); *Checkers Eight Ltd. P'ship v. Hawkins*, 241 F.3d 558, 563 (7th Cir. 2001) (applying Illinois law)).

With that guidance from the court of appeals in mind, the Court turns to the Illinois standard. In order to show that the liquidated damages clause is unenforceable, the party contesting its applicability must demonstrate that the actual damages arising from the signage provision may be easily ascertained or that the provision is not a reasonable estimate of the damages that would result from the breach. See *Lake River Corp.*, 769 F.2d at 1290; see also *Crown Products*, 1991 WL 2255574, at *3; *Energy Plus Consulting, Inc. v. Illinois Fuel Co.*, 371 F.3d 907, 909 (7th Cir. 2004) (put another way, a liquidated damages clause is valid and enforceable in Illinois where "(1) the actual damages from a breach are difficult to measure at the time the contract was made, and (2) the specified amount of damages is reasonable in light of the anticipated or actual loss caused by the breach"). When evaluating such a clause under the Illinois test, courts should be "mindful that there is no fixed rule applicable to liquidated damages provisions, as each must be evaluated on its own facts and circumstances." *Energy Plus*, 371 F.3d at 909. In addition, if the court determines that the purpose of the clause is to secure performance of the contract, then the provision becomes an unenforceable penalty under Illinois law. See *Checkers Eight*, 241 F.3d at 562.

On balance, the Court concludes that the clause at issue is enforceable as a liquidated damages provision. Defendants contend that the clause should not be enforced because the "fixed amount" bears no reasonable relationship to the damages that Ace claims to have incurred and Ace has not argued or proved that its damages are difficult or impossible to quantify. Defs. Opp. at 5 (citing *Hidden Grove Condominium Assoc. v. Crooks*, 318 Ill. App. 3d 945, 947 (3rd Dist. 2001); *United Order of Am. Bricklayers and Stone Masons Union No. 21 v. Thorleif & Son,*

*Inc.*, 519 F.2d 331 (7th Cir. 1975)).  That line of argument misses the mark, because Defendants, not Ace, bear the burden of demonstrating that the damages claimed are not reasonable or that the damages were not difficult or impossible to quantify.  See, *e.g.*, *Crown Point*, 1991 WL 2255574, at *3 (noting that the challenging party who carried the burden in invalidating the liquidated damages provision failed to cite to evidence in the record showing that $550,000 was an unreasonable estimation of the damages at issue and thus allowing the clause to stand).  Marn has not met this burden.  Noticeably absent from Defendants' brief and supporting documentation is any evidentiary support for invalidating the liquidated damages provision as a penalty.

In addition, the two cases upon which Defendants rely in support of their position are distinguishable.  The facts supporting the Illinois Appellate Court's determination not to uphold a liquidated damages clause in *Hidden Grove* are not present here.  In *Hidden Grove*, members of a condominium association, under the terms of their bylaws, were charged a late assessment fee of $25 on a cumulative monthly basis.  See *Hidden Grove*, 318 Ill. App. 3d at 947.  Thus, if a member missed a single payment in January, and did not make that payment until October, the member would be charged $225 (10 months times $25), rather that one $25 late fee (with interest).  *Id.*  The court held that "a cumulative late charge is an unreasonable charge for failure to pay one monthly assessment fee," but added that "a one-time late charge of $25 would be reasonable."  *Id.*

Here, by contrast, the liquidated damages clause by its terms does not apply cumulatively, nor does Ace argue that it does.  Marn was to be charged a single fee – $10,000 – each month in which Marn failed to remove the signs for one or more days.  See Ace SOF, Ex. 1.

The holding in *Hidden Grove* thus has no bearing on this Court's consideration because the court's finding of unreasonableness rested on the cumulative application of the fee at issue.

Defendants' reliance on *Thorleif* fares no better, because the facts of that case likewise are not on point.  In *Thorleif,* the Seventh Circuit reversed a district court's finding that a provision imposing a 10% liquidated damages fee on tardy payments by the employer to its employees' pension fund was an unenforceable penalty.  519 F.2d 331, 337 (7th Cir. 1975).  The clause – which was upheld – bore no resemblance to the one here and Defendants fail to provide any argument as to why the holding in that case supports their argument that the liquidated damages clause for the signage violation here should be void as a penalty.

Two final points to which Defendants allude, but do not develop, briefly merit the Court's attention.  First, the Court notes Defendants' conclusory assertion that the unreasonable nature of the provision is evident from the amount itself — here, $10,000 per month.  See *Kothe v. Taylor*, 280 U.S. 224, 225 (1930).  Second, the Court discerns a suggestion by Defendants that the sole purpose of the clause at issue here was to secure performance of the agreement.  However, considering both the plain language of the provision and Ace's plausible explanation that the purpose of the clause was to protect Ace's intellectual property rights (see Ace Reply at 6), the Court does not find either of Defendants' underdeveloped arguments persuasive.

Article II, Section 7 expressly contemplates protection of the Ace name as a trademark through various mechanisms,[13] and the signage provision allowing for liquidated damages

---

[13]  Article II, Section 7 states in full:

The Member agrees:

> 7. **<u>Use of "ACE" Identification to Cease Upon Termination of Agreement.</u>**  Upon termination of this Agreement for any reason, to discontinue the use of any and all Marks, including but not limited to, the word "ACE" and the use of all trade names, trademarks, service marks, or logos belonging to or registered by [Ace] (including, but

clearly flows from Ace's interest in protecting that trademark. The Court concludes that in view of the inherent difficulty in quantifying damages related to unauthorized use of a trademark such as the Ace name, the $10,000 per month fee for a former member's use of the Ace name after the termination of its membership is not unreasonable on its face, nor it its sole purpose to secure performance under Article II, Section 7 of the Agreement. Indeed, in view of the clear language of the Agreement, the Court is puzzled to understand why Marn did not simply remove the signage and eliminate the issue altogether, for it strikes the Court as highly likely that the cost of taking down the signs would have amounted to a fraction of the amounts due under the Agreement.

In sum, in view of the absence of evidence or legal authority supporting Defendants' position, the Court concludes that Defendants have not met their burden of showing by a

---

not limited to, any reference to [Marn's] former affiliation with [Ace]) and to remove, at [Marn's] sole expense, all identification signs and decals used by [Marn] at the licensed location which contain any of the foregoing, (it being further understood that this also requires that the word "ACE" be eliminated if it has been used as a Member's corporate name or trade name at such location). Further, if [Marn] continues, following such termination, to display at or have affixed to the licensed location any such identification signs bearing any marks of [Ace], then [Marn] agrees to pay to the Company a fee in the amount of Ten Thousand Dollars ($10,000.00) per month, payable on the first day of each and every month during which any such identification sign continues to be affixed to or displayed at the license locations for one or more days. Such payments shall continue to accrue and be due and payable under the first day of the month following the months in which all such identification signs have been permanently removed from the licensed location. Without prejudice to [Ace's] right to collect the fees hereinabove prescribed and to pursue any other remedies, whether at law or in equity, the parties agree that any display of identification signage bearing any of [Ace's] trade names, trademarks, service marks, or logos by [Marn] following the termination of membership is an infringement thereof, the continuation of which is likely to result in irreparable harm to [Ace], and in such event, [Ace] is hereby granted the right, with or without process of law, to remove signage and, in furtherance thereof, [Marn] expressly grants [Ace] the right to enter upon and have free access to the licensed location without being deemed guilty of trespass or any other tort whatsoever for the purpose of the aforesaid. [Marn] further agrees that it will pay promptly, upon demand, any and all of [Ace's] costs and expenses, including reasonable attorney's fees, incurred by the Company in exercising the aforesaid rights and remedies. The provisions of this Article II, Section 7, shall survive the termination of this Agreement.

Ace SOF, Ex. 1 at 3.

preponderance of the evidence that the damages calculated pursuant to the liquidated damages provision in Article II, Section 7 are either unreasonable or easily ascertainable. Ace therefore is entitled to damages in the amount of $90,000.00 pursuant to Article II, Section 7 for Marn's post-termination breach arising from its failure to remove signs bearing Ace's name from the Marn storefront.

Finally, the Agreement at Article II, Section 7 states that "the Member [Marn] further agrees that it will pay promptly, upon demand, any and all of the Company's [Ace's] costs and expenses, including reasonable attorney's fees, incurred by the Company in exercising any of the aforesaid rights and remedies [in Article II, Section 7.]." Ace SOF, Ex. 1 at 3. Defendants offer no material facts that give rise to a dispute over Ace's entitlement to relief under this provision. Thus, Ace's motion is granted in this respect as well. Ace is directed to file and serve on Defendants within fourteen days of this decision a memorandum with supporting evidence setting forth the costs and expenses, including attorney's fees, associated with Ace's pursuit of Marn's breach of the signage provision so that the Court may determine – after reviewing Defendants' responsive memorandum, due fourteen days after Ace files its memorandum – the appropriate amount owed.

**B.** **Ace's Breach of Contract Claim against Arnold**

Ace also seeks summary judgment against individual Defendant Arnold for breach of contract under the provisions of the guaranty of credit signed by Arnold and operative on December 19, 2003. See Ace SOF, Ex. 11. Under the guaranty of credit, Arnold "unconditionally guaranteed" to Ace and its successors and assigns that Marn would "fully, promptly and faithfully perform, pay when due, and discharge the full amount of all of [Marn's] present obligations" to Ace, as well as "all future obligations to [Ace] hereafter incurred by

[Marn] in connection with the purchase of merchandise or supplies from [Ace], or in connection with services render by [Ace] for [Marn]." Ace SOF, Ex. 11 at 1. In addition, Arnold agreed to pay Ace "all losses, costs, reasonable attorney's fees or expenses of any nature which may be suffered or incurred by [Ace] by reason of Customer's [Marn's] default." *Id.*; see also Defs. Ans. ¶ 23 (Arnold admits that the guaranty of credit required Arnold to pay Ace "all costs and reasonable attorney's fees or expenses incurred as a result of Marn's non-payment.").

Defendants concede that if the Court finds that summary judgment is appropriate for Ace on the breach of contract claims raised in Count I, then Arnold is personally liable pursuant to the guaranty of credit – and thus summary judgment, if found for Ace on Count I, is undisputed with respect to Count II. See Defs. Opp. at 6. The Court agrees that under the terms of the guaranty of credit Arnold is personally liable for the amounts owed by Marn related to its contractual breaches outlined in Count I. The Court further finds that under the terms of the guaranty of credit, Arnold is responsible for Ace's reasonable attorney's fees, costs, or expenses incurred by Ace as a result of Marn's default. See Ace SOF, Ex. 11 at 1. Thus, summary judgment is entered for Ace and against Arnold in his individual capacity in the amount of $161,598.03, plus costs and expenses, including reasonable attorney's fees incurred by Ace pursuant to the terms of the guaranty of credit.

## C. Defendants' Breach of Contract Counterclaim under the Agreement

In addition to moving for summary judgment on its own claims for breach of the Agreement, Ace moves for summary judgment on Defendants' breach of contract claim raised in their amended counterclaim filed on May 8, 2007. Judge St. Eve dismissed Count II of Defendants' amended counterclaim for fraudulent misrepresentation on July 19, 2007, and thus Defendants' remaining claim is one for breach of contract. See [52]. In Count II of their

amended counterclaim, Defendants allege that "the continuing conduct of ACE as described herein [¶¶5-11] was in breach of multiple terms of the Agreement and the representations upon which MARN and ARNOLD were induced to enter into the Agreement." Am. Counterclaim ¶ 13.

In response to interrogatories propounded by Ace, Defendants identified five provisions of the Agreement that they assert were breached by Ace. Ace first argues that the record is devoid of any evidence that supports any breach of the enumerated provisions or that Defendants sustained any recoverable damages. Defendants do not contest Ace's characterization of their counterclaim, and instead challenge Ace's argument on the merits.

In the Seventh Circuit's oft-repeated words, summary judgment is the "put up or shut up moment in a lawsuit when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citing *Schacht v. Wis. Dept. of Corr.*, 175 F.2d 497, 504 (7th Cir. 1999); see also *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). Because Ace moved for summary judgment on their counterclaim, Defendants must come forward with any material fact(s) in support of their version of events that could convince a trier of fact that Defendants should prevail on their counterclaim. See *Johnson*, 325 F.3d at 901.

Under the same law applicable to Ace's contractual claims, the elements of a cause of action for breach of contract in Illinois are "(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff." *Priebe v. Autobarn, Ltd.,* 240 F.3d 584, 587 (7th Cir. 2001) (quoting *Hickox v. Bell,* 195 Ill. App. 3d 976, 992 (5th Dist. 1990)). Defendants have the burden of proving these elements in order to prevail on their counterclaim. The parties agree that the

Agreement is valid and enforceable.  See Defs. Ans. ¶ 23.   Ace first argues that Defendants fail to "put up" any concrete evidence that they have suffered injury in this case, *i.e.* damages, and because that is an essential element of Defendants' counterclaim, the Court addresses it first.

## 1.   *Damages*

Ace first argues that Defendants have failed to provide any evidence of recoverable damages.  Ace addresses four of the five alleged contractual breaches together, and separately addresses the damages tied to Ace's alleged breach under Article I, Section 3 of the Agreement for undelivered retail support.  As a subset of the damages question, the Court also will address whether Defendants have established that Marn may be entitled to any amount for set-off or recoupment to be applied against Ace's damages under Count I of Ace's contract claim, because the issues are related.

Generally, if the party opposing summary judgment fails to make a sufficient showing on an essential element of his case to which it bears the burden of proof, there can be no genuine issue of material fact, "since a complete failure of proof concerning an essential element necessarily renders all other facts immaterial."  *Celotex v. Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986)).  Thus, where the non-moving party fails to make a showing sufficient to establish an element on which it bears a burden, summary judgment must be granted.  *Id.* at 322; see also *Common v. Williams*, 859 F.2d 467, 469 (7th Cir. 1998). That principle applies equally to the element of damages as it does to any other element of a claim.  See *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 1001 (7th Cir. 1992) ("As damages are an essential element for breach of contract under [state] law, (*Strong v. Comm'l Carpet Co.*, 322 N.E.2d  387, 391 (1975)), and Appellant failed to show any, summary judgment for the City on breach of contract was appropriate").  For purposes of this section, the Court assumes that Defendants could establish

the other elements required to prevail on a breach of contract claim. If Defendants cannot show that a genuine issue of material fact exists in relation to their damages sought in their counterclaim, summary judgment must be entered in favor of Ace.

> a. Losses of "Undetermined Amounts" for Four out of Five Alleged Breaches

Ace contends that Defendants have failed to identify, with any specificity, damages for four of the five alleged contractual breaches and instead, by interrogatory response, simply state that their damages were of a "loss of undetermined amount."[14] Ace Mem. at 6. In response, Defendants concede the following: (i) "as acknowledged in ARNOLD's affidavit, Par. 11 * * * as ACE [] correctly notes, ARNOLD was unable during discovery to quantify himself said damages"; (ii) "ACE is correct that Defendants did not disclose an expert witness for calculation of damage within the time provide by the Court" and "the controlling factor in not doing so was expense"; and (iii) "what Defendants have been able to do is identify the promises they relied on in becoming an ACE member and the type of damages caused when those promises were broken." Defs. Opp. at 8. Despite these concessions, Defendants contend that they have "created a fact issue on the subject of damages which should be tried before a jury." *Id.* at 9. Defendants argue, essentially, that although they are unable to specify their damages, the identification of "types" of damages consistent with their theory of the case is sufficient to survive summary judgment and allow a jury to determine whether Defendants have met their burden of proof.

---

[14] The alleged breaches specified by Ace where damages were identified by Defendants as "losses of undetermined amount" include: (1) Article I, Section 2 (misapplication of the ADSO system to Marn's orders resulting in a denial of merchandise); (2) Article II, Section 3 (advertising the Ace Internet site with advertising materials paid for by Ace members); (3) Article II, Section 11 (refusal to issue credits for late payment charges applied against Marn that were the result of a misapplication of ADSO); and (4) Article III, Section 2 (wrongful termination of the Agreement). See Ace SOF, Ex. 2 at 2. Defendants do not dispute this categorization.

While the Court is sympathetic to Defendants' position that the cost of litigating this case has caused them financial strain, Defendants remain responsible for complying with the Rules of Civil Procedure and shouldering the burdens imposed by law in support of their claims at each stage of the case. In the current posture of the case, Defendants may not rely on self-serving assertions regarding their undetermined loss of damages to avoid summary judgment. See *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006) (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997) ("Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment.") The problem is not that the damages are "undetermined," but rather that Defendants have failed to provide tangible evidence that they suffered any damages "to a reasonable degree of certainty" as a result of any action by Ace under the Agreement. See *Haslund v. Simon Prop. Group, Inc.*, 378 F.3d 653, 658 (7th Cir. 2004). In *Haslund*, the Seventh Circuit, applying Illinois law, held that the district court had properly ruled against the defendant where there was no evidentiary basis for estimating damages. *Id.* As the Seventh Circuit noted, "[a]ssessing damages is often and permissibly speculative, but only within limits." *Id.* And, under Illinois law, "a plaintiff has the burden of proving damages to a reasonable degree of certainty." *Id.*; see also *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 635-636 (7th Cir. 2007) (finding summary judgment appropriate in a breach of contract case where "the evidence before us * * * simply does not establish a basis upon which damages can be calculated to a reasonable degree of certainty"). The plaintiff's burden includes not only showing that the damages are causally related to the breach and not some other independent cause, but also establishing the correct measure and computation of damages. *Olliver v. Aldern*, 262 Ill. App. 3d 190, 196 (2nd Dist. 1994).

One of Defendants' few pertinent citations to evidence in the record on the quantification of damages is Exhibit H, attached to Defendants' LR 56.1 statement of additional facts. See Defs. Opp. at 8; Defs. SOAF, Ex. H. Defendants contend that the chart set forth at Exhibit H "establishes that Marn's losses jumped from $53,591 in 2002 (its last year as a Tru-Serve member) to $94,619 in 2002 (its first year with ACE)." Defs. Opp. at 8. Ace disputes the authenticity of Exhibit H and contends that it is inadmissible for summary judgment purposes because Defendants failed to offer any affidavits, testimony or other source documents authenticating the chart as required by Rule 56(e). The Court finds that the admissibility of Exhibit H is questionable at best. It appears to be a summary document spanning several years and several subjects presumably related to the financial condition of Marn, although the Court notes that Marn's name appears nowhere on the document. However, no additional information is provided, through explanatory testimony or otherwise, that assists the Court in determining whether the chart is admissible either as a self-authenticating document (which the Court doubts) or might fall within an exception to the hearsay rule as a document prepared in the regular course of Marn's business practice. As Ace points out, documents upon which a party seeks to rely for summary judgment purposes must be admissible, and supported with affidavits to verify their authenticity. See Fed. R. Civ. P. 56(e); see also *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003) ("To be admissible, documents must be authenticated and attached to an affidavit that meets the requirements of Rule 56(e).") Thus, without an affidavit or other testimony provided by Marn to substantiate the admissibility of this document, the Court may not consider it.

Moreover, even if the chart at Exhibit H were admissible, it does not raise a genuine issue of material fact in support of Defendants' damages claim. Defendants contend that Exhibit H shows "lost profits" that reflect their damages arising from the Ace relationship. Defs. Opp. at 8

(asserting that "the graph establishes that MARN's losses jumped from $53,591 in 2003 (its last year as a Tru-Serve member) to $94,619 in 2004 (its first year with ACE)").  However, under Illinois law lost profits, like damages generally, must be proven with a reasonable degree of certainty.  See *TAS Distrib.* 491 F.3d at 632-633.  In *TAS Distributing*, the Seventh Circuit noted that the Illinois Supreme Court has expressly analyzed the issue of lost profits as a claim for damages, and held that "the law does not require that lost profits be proven with absolute certainty.  Rather, the evidence need only afford a reasonable basis for the *computation* of damages, which, with a reasonable degree of certainty, can be traced to defendant's wrongful conduct."  *Id.* at 633 (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill.2d 325 (2002) (citations omitted)).  The chart itself offers no explanation as to how the "loss" increased in from 2003 to 2004, nor do Defendants offer an explanatory testimony as to *how* the alleged loss was computed.  In sum, Defendants simply fail to set forth any evidence – including Exhibit H – showing that its damages can be calculated with a reasonable degree of certainty.

b.  Losses related to Undelivered Retail Support

Defendants do provide an estimate of the damages that they allege occurred as a result of Ace's alleged breach of Article I, Section III for failure to deliver promised retail support. Defendants allege two categories of damages:  (1) approximately $45,000 in losses related to loans that were promised but never given; and (2) $334,915.00 in undelivered retail support.  See Ace SOF, Ex. 2 at 2 (Defendants's Interrogatory Responses) ("Ace consistently and on each and every day of the term of the Membership Agreement, did deny Marn's promised retail support financing and retail support expertise").  Ace argues that as a matter of law, Defendants cannot recover the $45,000 in loans because (i) Article I, Section does not provide a right to a loan or even mention a loan, (ii) Defendants have not provided any evidence of Marn's financial loss to

meet its burden under Illinois's standard for breach of contract, (iii) Marn released Ace for any liability relating to the denial of requested loans under the terms of the Agreement, and (iv) even if Ace had agreed to loan Marn money, Marn would be required to pay it back, and thus no damages exist. Ace Mem. at 8. With respect Defendants' claim for $334,915.00 in undelivered retail support, Ace argues that (i) Defendants' attempt to rely on *pro forma* statement is barred not only as a matter of law but also on the face of the statement itself as an accurate measure of damages; (ii) Defendants' failed to show that any damages were proximately caused by Ace's breach, and (iii) the record is devoid of any evidence as to how the $334,915.00 is calculated, and Defendants have failed to identify what type of damages – i.e. lost profits, lost revenue, or some other form – that amount represents.

The Court begins with Defendants' argument that Marn suffered damage in the amount of $45,000,00 in loans that allegedly were promised by, but not received from, Ace. Defendants contend that Ace promised to help Marn with the cost of conversion from a Tru-Serve Hardware member to an Ace member. Defs. Opp. at 6. But even assuming for purposes of this analysis that Defendants could show that (i) Ace breached the Agreement by promising support to Marn and (ii) Marn sustained financial damage as a result of Ace's failure to provide Marn with the loans requested to convert to an Ace member store, Defendants' claim for damages arising out of the failure to provide the requested loans still fails. Under the terms of its application for a loan from Ace, Marn expressly released Ace from any liability or damages. The loan application stated: "[t]he applicant hereby releases ACE Hardware Corporation and each of its officers, directors, employees and agents from any and all damage to liability claims arising out of or based upon (1) any of the investigation procedures utilized by ACE in reviewing the Application or (2) ACE's *denial of the loan*." Ace SOF, Ex. 13 (emphasis added). Arnold signed the

application on behalf of Marn. *Id.* By the terms of the application to which Marn agreed, Defendants are barred from seeking any damages resulting from Ace's denial of a loan, or a decision to loan Marn less money that it had originally promised.

Defendants' claim for $334,915.00 in undelivered retail support under Article I, Section 3 fails for the same reasons that their claims for damages under the other alleged contractual breaches failed: Defendants have not met their burden of proof on damages. See *supra* Section C(1)(a). Ace attaches the first page of a *pro forma* statement on which it believes Defendants may have relied in support of their claim for $334,915.00. Ace surmises that Defendants reached that figure by calculating the difference between actual performance and the sales projections included in the *pro forma* statement. See Ace Mem. at 8; Ace SOF, Ex. 12. Defendants agree that they are not entitled to rely on a *pro forma* statement in order to establish damages, stating that the principle is "correct and beside the point." Defs. Opp. at 7. However, Defendants offer no other evidence specific to this claim in their opposition. Rule 56(e)(2) instructs that "when a motion for summary judgment is properly made and supported, an opposing party * * * must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Defendants have not offered any evidence, by affidavit or otherwise, to support their determination that the loss amounted to $334,915.00, and thus summary judgment must be entered against Defendants on their claim of contractual breach as well.

c.    Recovery of Set-offs or Recoupment

As set forth above in the Court's analysis of Ace's breach of contract claim, the Seventh Circuit has explained that prior to the promulgation of the Federal Rules of Civil Procedure, the common law equitable doctrines of "setoff" and "recoupment" encompassed the methods by which a defendant could seek to reduce its liability by pleading that the plaintiff owed it money.

See *Coplay Cement Co., Inc. v. Willis & Paul Group*, 983 F.2d 1435, 1440 (7th Cir. 1993). "The plea was called 'recoupment' if the plaintiff's debt to the defendant arose out of the same transaction as the defendant's liability to the plaintiff and 'setoff' if it did not." *Id.* Thus, recoupment is the ancestor of a compulsory counterclaim required under Rule 13(a), and setoff is the ancestor of a permissive counterclaim brought pursuant to Rule 13(b). *Id.* Any claims that Marn has against Ace for the purpose of reducing the damages owed under Count I for breach of the Agreement therefore must be encompassed within Defendants' counterclaim. See, *e.g.*, *id.* at 1441 ("[A] setoff, so far as relevant here, is just a subset of the permissive counterclaim.").

Defendants' claim for a credit owed based upon a misapplication of ADSO is one for recoupment, and not set-off, because it "arose out of the same transaction as the defendant's liability." *Id.* at 1440. Similarly, any claim for a credit from patronage dividends owed would be for recoupment. Because a claim for recoupment is a subset of a mandatory counterclaim under Rule 13(a), Defendants bear the burden of proof. See *E. J. Brach Corp. v. Gilbert Int'l, Inc.*, 1991 WL 148914, at *1 (N.D. Ill. June 18, 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Based on a review of the contractual breaches alleged by Defendants, their claim for recoupment is encompassed in their claims for breach under Article I, Section 2 (misapplication of ADSO) and Article II, Section 11 (credits for late payments resulting from the misapplication of ADSO). However, as detailed above, Defendants failed to provide any evidence supporting a calculation of damages for those claims. See *supra* Section III(C)(1)(a). Plaintiffs simply have stated that damages related to those alleged breaches are "undetermined," and have failed to provide any method of calculation by which a trier of fact could determine damages with a reasonable certainty. Ace SOF, Ex. 2 at 2. Under Illinois law, "a plaintiff has the burden of

proving damages to a reasonable degree of certainty." *Haslund*, 378 F.3d at 658; see also *TAS Distrib.*, 491 F.3d at 635-636 (finding summary judgment appropriate in a breach of contract case where "the evidence before us * * * simply does not establish a basis upon which damages can be calculated to a reasonable degree of certainty"). Having failed to meet their burden, Defendants are not entitled to recoupment against the amounts owed to Ace under Count I.

## 2. *Other Elements of Breach of Contract*

As shown above, Defendants have failed to raise a genuine issue of fact with respect to the damages sought on their counterclaim. For that reason alone, Defendants' counterclaim cannot survive summary judgment. See *TAS Distrib.*, 491 F.3d at 635-636. In addition, and wholly independent of the foregoing analysis, Defendants cannot demonstrate a second element of their breach of contract claims: that Marn performed its obligations under the Agreement. Cf. *Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc*., 2005 WL 435263, at *9 (N.D. Ill. 2 Feb. 16, 2005). As outlined above, there is no dispute that Marn failed to pay Ace for merchandise and retail services under the terms of the Agreement and failed to remove signage as required by the Agreement. For that reason, even if Defendants had presented sufficient evidence to sustain a damages claim, Ace would be entitled to summary judgment on Defendants' breach of contract counterclaim.[15]

## D. Declaratory Judgment

Count III of Ace's Complaint, seeking declaratory judgment, still remains. Ace indicated in its opening memorandum that if "the relief requested in this Motion is granted, Ace will agree to voluntarily dismiss" Count III. Ace Mem. at 1, n.1. In light of that position, Ace chose not

---

[15] Because the Court has concluded that Defendants have not come forward with evidence establishing a triable issue of fact concerning either their damages or their own performance under the Agreement, the Court need not address any arguments concerning Ace's performance of the alleged obligations under the Agreement raised by Defendants.

move for summary judgment on Count III, and thus the Court does not address that count. In light of this Court's rulings on Ace's claims and Defendants' counterclaims set forth above, the Court requests that Ace promptly notify both Defendants and the Court in writing within seven days of this decision whether it intends to voluntarily dismiss Count III.

## IV.  Motion for Rule 11 Sanctions

Finally, along with its motion for summary judgment, Ace asks this Court to impose Rule 11 sanctions upon Defendants. Ace contends that Defendants' insistence on resisting liability on Ace's claim for unpaid merchandise for approximately $75,000 was "false and frivolous" given Arnold's admission in his deposition that Marn owed Ace money. In support of its motion, Ace points to several responses in Defendants' initial answer (filed February 2, 2007) denying liability for the unpaid merchandise, arguing that those responses violate Rule 11(b)'s mandate that counsel undertake a reasonable inquiry in advance of presenting a pleading or argument before the Court because Arnold knew that Marn owed money to Ace.[16] See Ace Sanctions Motion [64] at 1-2. Ace further argues that Defendants caused delay and effort in these proceedings that could have been avoided had counsel done a reasonable investigation as required under Rule 11 prior to filing its answer and initial counterclaim. *Id.* at 3-4.

Defendants and their counsel stand by the statements in their initial answer and note the dispute over the application of the ADSO system and Arnold's attempts via email and letter

---

[16] The statements at issue are the following:

Answer, in part, to Ace's introductory paragraph: "Defendants deny that they have refused to pay for merchandise received."

Answer to ¶ 16: Defendants deny that "Marn has breached the Agreement by, *inter alia,* refusing to pay for merchandise, despite being legally obligated to do so."

Answer to ¶ 17: Defendants deny that "Ace has been damaged, *inter alia,* by Marn's breach because it is owed money for unpaid merchandise."

correspondence to resolve the issue at the close of the parties' business relationship. See Defs. Opp. to Sanctions Motion [80] at 2. Defendants assert that the record supports their responses because an ongoing dispute existed regarding the amount owed for unpaid merchandise and thus Rule 11(b) was never violated. The Court agrees with Defendants, and therefore Ace's motion for sanctions is denied.

While Rule 11 does allow the Court discretion in imposing sanctions, the Court does not agree that the conduct with which Ace takes issue violates the rule.[17] The central purpose of Rule 11 is to "deter abusive litigation practices." *Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1013-1014 (7th Cir. 2004) (upholding denial of sanctions where the district court did not believe that claims were "filed in bad faith or for an improper purpose or without adequate investigation"); see also *Mortle v. United Parcel Serv.*, 247 Fed. Appx. 820, 823 (7th Cir. 2007). And while "the Rule 11 sanction serves an important purpose, it is a tool that must be used with

---

[17] Rule 11 states, in relevant part:

> (b) **Representations to the Court.** By presenting to the court a pleading, writing motion, or other paper—whether by signing, filing, submitting, or later advocating—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>                         * * *
>
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual allegations are warranted on the evidence, or, if specifically so identified, are reasonably based on belief or lack of information.
>
> (c) **Sanctions**.
>
> > (1) *In General.* If * * * the Court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.
>
> (Emphasis added).

utmost care and caution." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Serv.*, 9 F.3d 1263, 1269 (7th Cir. 1993). Although the Court has found in favor of Ace on summary judgment for the claim of unpaid merchandise, based in part on Arnold's admission of liability, there remained the possibility that at the end of the litigation, damages recoverable by Defendants could have reduced or negated any amounts due to Ace. The Court does not view the position taken by Marn to constitute an abusive litigation practice. It certainly was possible, at the time that the initial answer was filed, that Defendants and their counsel believed that success on the issues raised in their set-off claim (which, as the Court explained above is part of their counterclaim), may have reduced the amount owed by Marn to Ace.

Ultimately, any hope for recovery for Defendants has been dashed, in part as a result of Defendants' misapprehension of the applicable burdens for a claim of set-off or recoupment and the absence of evidentiary support for its counterclaim. But those shortcomings alone are not grounds for finding sanctions appropriate, as the Court does not find Defendants' position objectively unreasonable. See, *e.g.*, *id.* at 1270 (noting that "sanctions do not inevitably flow from being wrong on the law"). Ace acknowledges that very issue, but appears to dispute the manner in which Defendants styled their response. See Ace Reply [90] at 1 ("Rather than admitting to the Court (*i.e.* its answer to the Complaint) that 'we owe Ace money for merchandise but we are not paying it because we believe Ace also owes use money' or simply admitting 'we can't afford to pay,' Defendants denied" the allegations at issue.). Defendants respond that they simply denied the allegations because they did not "refuse" to pay for the merchandise, but instead "failed" to do so: they either could not pay or were working to resolve the amounts owed up until the termination of the relationship and the start of the litigation. See Defs. Opp. Sanctions Motion at 3. Plaintiffs' approach, though perhaps inartful, fails to rise to

the level of sanctionable conduct under Rule 11.[18]   Therefore, Ace's motion for sanctions is denied.

## V.       Conclusion

For the reasons stated above, Ace's motion for summary judgment on Counts I and II of its amended complaint and on Count I of Defendants' amended counterclaim is granted, and Ace's motion for Rule 11 is denied.   Ace is directed to file and serve on Defendants within fourteen days of the date of this decision a memorandum with supporting evidence setting forth its costs and expenses, including attorney's fees, related to Marn's breach of the signage provision.   Defendants are given leave to file a responsive memorandum within fourteen days of the filing of Ace's memorandum.   Ace is further directed to inform both the Court and Defendants in writing within seven days of the date of this decision whether it intends to voluntarily dismiss Count III of its amended complaint.

Dated:  September 16, 2008

_____
Robert M. Dow, Jr.
United States District Judge

---

[18] Even if the Court had determined that Defendants' denials violated Rule 11, such a finding would not have been outcome-determinative.  Ace cites to case law indicating that Rule 11 sanctions are *mandatory* if a Court determines a violation has occurred.  But under the amended version of Rule 11, effective December 1, 1993, "the imposition of sanctions is discretionary rather than mandatory."  *In re Generes*, 59 F.3d 821, 826-827 (7th Cir. 1995); see also Fed. R. Civ. P. 11(c) (A court "*may* impose" sanctions for a violation of Rule 11(b) (emphasis added)).  Considering all of the circumstances of this case, including the uncertainty regarding the proper legal rubric for analyzing a claim for set-off or recoupment, the Court would find that sanctions would not be appropriate in any event.